**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON B.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22 C 1850** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, 1382c, nearly seven

years ago in March of 2016. (Administrative Record (R.) 388-403). He claimed that he had been

disabled since January 1, 2015, due to diabetes, depression, anxiety, arthritis in his knee and ankle,

and high blood pressure. (R. 477). Over the next six years, plaintiff's application was denied at

every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and

appeals council. While that was going on, plaintiff apparently went back to work, so he later

amended his claim to say he became disabled on January 1, 2020. (R. 12). It is the ALJ's decision

that is before the court for review. See 20 C.F.R. §§404.955; 404 .981. Plaintiff filed suit under 42

U.S.C. § 405(g) on April 8, 2022. The parties consented to my jurisdiction pursuant to 28 U.S.C.

§ 636(c) on April 27, 2022 [Dkt. # 9], and the case was reassigned to me about a month later, on

May 23, 2022. [Dkt. #10]. Plaintiff asks the court to reverse and remand the Commissioner's

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on February 20, 1974, making him 40 years old when he first claimed he became disabled and unable to work, and about 46 as of his amended disability date. (R. 12, 397). Plaintiff has a good work record, working fairly steadily from 1996 through his first alleged disability date to 2020. (R. 455-56). For much of that time, he worked as a custodian and then a cook for a school district. More recently, he has been a cook for a home care service. (R. 513-17). At the time of his most recent administrative hearing, he still was. He was being paid to take care of his mother. (R. 15). He cooks for her, does the grocery shopping, and does the laundry at the laundromat. (R. 15-16). In his application to proceed *in forma pauperis*, he stated he was still doing this work, and getting paid $400 month. [Dkt. #4].[2]

Yet, at his most recent administrative hearing in April of 2021, the plaintiff testified that he can't stand up at all." (R. 23). He said he will be in the grocery store but, nevertheless, he "can't stand up." (R. 23). He also said he can't sit for long – he "wants [his] bed." (R. 24). He took over-the-counter medication for his back pain, and his pain went away while he slept. (R. 25). Plaintiff said he uses a cane every day to walk. (R. 26).

Plaintiff testified that he had medication for his bipolar disorder, but he didn't take it every day. (R. 27). He told the ALJ that he drank once a week, but when his attorney asked him how much, he said, "Jesus Christ, I don't know." (R. 36). Then, the plaintiff said he drank a six-pack

---

[2] Actually, his earnings for taking care of his mother have ranged from about $500 a month to about $600 a month. (R. 448-49).

or a twelve pack, and then he said he hadn't had alcohol in two or three years.  (R. 36).

## B.

After a couple of administrative hearings at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: depression; bipolar disorder; alcohol use disorder; panic disorder; borderline personality disorder and seizure disorder.  (R. 173).  The ALJ said the plaintiff also had a number of other ailments – diabetes without complications; hernia status post repair in 2016; left ankle fracture with normal gait and lower extremity strength since the amended onset date; hypertension treated successfully with medications; an ulcer; COPD and benign prostatic hyperplasia controlled with medication – that did not amount to severe impairments.  (R. 173).  The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically considered the requirements for the Listings 11.02 (seizure disorders), and 12.04, 12.06, and 12.08 (mental impairments).  (R. 173-75). As for plaintiff's limitations due to his mental impairments, the ALJ found the plaintiff had moderate limitations in all areas of functioning: in understanding, remembering or applying information concentrating, persisting or maintaining pace; interacting with others; and adapting or managing oneself.  (R. 174-75).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform light work except:

> never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; understand, remember and carry out simple, repetitive and routine tasks limited to reasoning level 1 or 2; simple work related decisions with occasional workplace

changes; occasional interaction with coworkers and supervisors; no contact with the public; and needs a break of one to two minutes per hour to refocus, while at the work station.

(R. 175). The ALJ then reviewed plaintiff's allegations and activities at some length. (R. 176-77). She then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 25). She went on to summarize the medical evidence. Because the plaintiff returned to work and amended his onset of disability date right before his final administrative hearing, the pertinent evidence was rather limited. There were both negative and positive mental status exam results, and that ALJ indicated that the positive results seemed tied to plaintiff's non-compliance with medication regimes. (R. 177-79). The ALJ noted plaintiff's seizure disordered was well-controlled. (R. 179).

As for medical opinions, the ALJ noted that there was no opinion from any of plaintiff's medical sources indicating he was disabled or that he had greater limitations than the ALJ found. The ALJ gave "some weight" to the opinions from the state agency reviewing physicians that plaintiff did not have a seizure physical impairment. But the ALJ felt plaintiff's seizure disorder and pain from his combined non-severe impairments warranted a limitation to less than light work. (R. 179). The ALJ also gave "some weight" to the opinions from the state agency reviewing psychologists that plaintiff had only mild limitations in understanding, remembering or applying information concentrating, persisting or maintaining pace; interacting with others; and adapting or managing oneself. The ALJ felt the overall evidence supported moderate limitations in those areas,

4

but rejected an earlier finding that plaintiff was limited to one- or two-step tasks based on his activities. (R. 180). The ALJ rejected the finding from the consultative physical examiner that plaintiff needed a cane to walk more than 50 feet as unsupported by the medical record. (R. 180). The ALJ also rejected the consulting psychological examiner's finding that plaintiff's capacities for attention, concentration, and calculations were markedly impaired, noting that the examiner found plaintiff could manage his own funds, had worked since that examination, and examinations since his amended onset showed, at worst, constricted affect and sad mood and improvement with medication.

The ALJ then found that plaintiff was unable to perform his past relevant work as a cook or porter as those jobs were medium and heavy work. (R. 181). The ALJ then relied on the testimony of the vocational expert that plaintiff could perform other work that existed in significant numbers in the national economy: marker (D.O.T. #209.587-034; 53,000 jobs); "garment" [sic] (D.O.T. #222.687-014; 23,000 jobs); and classifier (D.O.T. #361.687-014; 55,000 jobs). (R. 182). The ALJ added that, even if plaintiff were limited to sedentary work and required a cane to get to his workstation, the vocational expert testified that there would still be jobs he could perform. (R. 182). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 183-83).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not

a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge". *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach

that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188

(7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were

correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*,

823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes

us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record.");

*Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate

the burden of proof on the causation element between the parties,...No matter, because we may

affirm on any basis that appears in the record.").

　　　Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs

hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep

water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might

see a trickle of a creek they can hop across with barely a splash.[3] But, the Seventh Circuit has also

called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*,

516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their

reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247,

252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence,

and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."

---

[3] A perfect example is the aforementioned *Jarnutowski*. There, two judges on the Panel felt the ALJ had not adequately explained aspects of her reasoning, 748 F.4th at 774-77, while a third judge, dissenting, thought she did. 748 F.4th at 77-79. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

*Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[4]  The ALJ has "done enough" here.

## III.

The plaintiff asserts that two errors mar the ALJ's opinion and require a remand.  First, the plaintiff contends that the ALJ failed to include a reasonable and logical limitation in her residual functional capacity finding to account for plaintiff's moderate restriction on concentration, persistence, and pace.  Second, the plaintiff argues that the ALJ also failed to include a reasonable and logical limitation in her residual functional capacity finding to accommodate plaintiff's seizure

---

[4] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive, but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

disorder.  Any other arguments plaintiff might have raised are, of course, deemed waived. *Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663, at *2 (7th Cir. Feb. 8, 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

## A.

We begin with another installment in the never-ending saga of concentration, persistence, and pace – or, as it has come to be known, "CPP." *Recha v. Saul*, 843 F. App'x 1, 3 (7th Cir. 2021); *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020); *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).  It comes up over and over, almost always when the ALJ – as the ALJ did here – says a plaintiff has a "moderate" limitation in CPP.   In this iteration, the plaintiff argues that the ALJ's accommodation for "that significant limitation" – which "was to include in her RFC that [plaintiff] would need 60-120 seconds (1-2 minutes), while remaining at the work-station to 'refocus'" – was inadequate.  The plaintiff also submits that the ALJ's conclusion that plaintiff would be able to "refocus" with a break of no more than 2 minutes had no nexus to the evidence. [Dkt. #13, at 13, 14]. The plaintiff submits that if he were off task 10% of the time – 6 minutes an hour – he would be disabled, as per the vocational expert's testimony. [Dkt. #13, at 14].

The plaintiff is perhaps overstating just how "significant [a] limitation" a moderate limitation on CPP is, given the way a moderate limitation is thought of now.  The moderate limitation on CPP has been fertile ground for plaintiff's briefs for years.  The Social Security Administration has long rated the degree of limitation in functional areas like CPP on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). But for nearly as long, it provided no definition of these levels, other than to state the obvious, that "marked" is "more than moderate, but less than extreme." 20 CFR Pt. 404, Supt. P, App. 1, 12.00(C).   So, in other

words, "moderate" was less than "marked." That was rather useless information, of course. *See, e.g., Moore v. Colvin*, No. 11 C 8931, 2013 WL 3790910, at *7 (N.D. Ill. July 19, 2013); *Andrews v. Colvin*, No. 15 C 7192, 2016 WL 4905671, at *6 (N.D. Ill. Sept. 15, 2016).

ALJs, then as now, had to account for a plaintiff's limitations in their hypotheticals and residual functional capacity findings. *Albert*, 34 F.4th at 614-15; *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). For a long time, ALJs sought to accommodate the undefined moderate limitations on CPP by restricting plaintiffs to unskilled work. If one stopped and thought about it, however, it didn't make sense. A simple or unskilled job might be easy to learn, but could demand constant focus. Think of an assembly line or:

> the classic Lucille Ball–Vivian Vance sketch where the two were tasked with wrapping candies coming down a conveyor at a candy factory. The job is exceedingly simple. It is repetitive, routine, and unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation. This is why a limitation to unskilled, simple work does not necessarily account for a limitation in concentration.

*Joanne F. v. Berryhill*, 370 F. Supp. 3d 935, 941 (N.D. Ill. 2019); *see also Juozas V. v. Saul*, No. 18 C 2044, 2019 WL 4280482, at *3 (N.D. Ill. Sept. 10, 2019); *Chimere J. v. Saul*, No. 418CV04065SLDJEH, 2019 WL 7546599, at *3 (C.D. Ill. Sept. 25, 2019). For a while, though, there was what the Seventh Circuit conceded was "uncertainty in the law regarding the formulation of hypothetical questions accounting for mental limitations", with cases going in both directions. *Kusilek v. Barnhart*, 175 F. App'x 68, 71 (7th Cir. 2006).

Then, there wasn't quite as much uncertainty. The Seventh Circuit decided that in most cases, a limitation to simple or unskilled work would not account for a moderate limitation in CPP. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)(". . . we have 'repeatedly rejected the

notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'"); *see also Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). The court even went so far as to rule out a limitation to jobs with production quotas or fast-paced requirements – like Lucy and Ethel's job – saying "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 676. As the court explained, the best way to account for a moderate limitation in CPP would be to just include it in the residual functional capacity finding or hypothetical. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). But, the court stopped short of saying exactly what would be acceptable, saying only there were "no magic words." *Crump*, 932 F.3d at 570. And ALJs continued to refuse to simply use "moderate" and "CPP" in their residual functional capacity findings and hypotheticals. As a result, and not surprisingly, litigation over this topic continued at a conveyor belt pace.

In 2017, the Commissioner amended the regulations to actually offer, for the first time, a definition of "moderate." The first time the Seventh Circuit had a chance to look at it was recently in *Pavlicek v. Saul*, where the Court explained:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. As the Commissioner points out, "fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

994 F.3d 777, 783 (7th Cir. 2021). In this case, as in *Pavlicek*, the ALJ accommodated plaintiff's

moderate limitation on CPP, at least in part, by restricting him to "simple, repetitive and routine tasks." Given what the court said in *Pavlicek*, that, as they say, should be that. But, the plaintiff still has an issue with the ALJ's decision because the ALJ also said that plaintiff needed "a break of one to two minutes per hour to refocus, while at the work station." That certainly seems to be an additional accommodation for the plaintiff's moderate restriction in CPP but, as the plaintiff argues, there doesn't appear to be anything tethering it to the record. No doctor said it. The ALJ didn't explain where it came from or cite any evidence in support. Even the Commissioner's lawyer – taking care to stay just this side of the *Chenery* doctrine – clearly has no definite idea where the ALJ got it. [Dkt. #15, at 4-5]. But it looks as though the ALJ decided that, while the consulting psychological examiner's finding that plaintiff's attention and concentration were markedly impaired (R. 901, 902) was unsupported (R. 180-81), a bit more of a limitation due to lack of focus was warranted than the state agency reviewing psychologists' findings that plaintiff could concentrate sufficiently to sustain efforts for a normal work period. (R. 86, 100, 118).

As the ALJ explained, she gave the state agency reviewing psychologists' marked limitation little weight, noting that plaintiff continued working there after and that more recent mental status exams made no mention of such severe difficulties maintaining focus. (R. 180). That's certainly a valid observation, as the evidence the ALJ cited, while not unremarkable, gave no indication of any concentration deficiencies:

> January 22, 2019 – mood: sad, anxious; affect: constricted; thought process: direct; thought content: obsessions; insight: limited; judgment: limited. (R. 1731)

> January 29, 2020 – mood: sad, anxious; affect: constricted; thought process: circumstantial; thought content: obsessions; insight: limited; judgment: limited. (R. 1735)

March 3, 2020 – mood: sad, anxious; affect: constricted; thought process: circumstantial; thought content: obsessions; insight: limited; judgment: limited. (R. 1740)

June 3, 2020 – mood: anxious; affect: congruent; thought process: direct; thought content: coherent; insight: fair; judgment: fair. (R. 1745)

February 2, 2021 – mood: sad, anxious; affect: constricted; thought process: direct; thought content: coherent; insight: fair; judgment: fair. (R. 1751)

February 18, 2020 – insight: good judgment; mental status: normal mood and affect and active and alert; memory: recent memory normal and remote memory normal. (R. 1784)

Indeed, that same day, the other consulting examiner – who, to be fair, was concerned with physical capacity – did do a brief mental status exam and observed that plaintiff could perform simple arithmetic including addition, subtraction and multiplication. (R. 907). Oddly, the plaintiff did not demonstrate that ability for the psychological consulting examiner, who said he was unable to subtract or multiply that very same day. (R. 901). Of course, it is entirely appropriate for an ALJ to give less weight to a medical opinion when it is inconsistent with evidence in the record. *Grotts*, 27 F.4th at 1277; *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch*, 981 F.3d at 602. That's what the ALJ did here, and she provided adequate reasoning for doing it.

The ALJ also explained that she gave some weight to the state agency reviewing psychologists' assessments, but that additional limitations were warranted given the overall evidence since those assessments were issued. (R. 180). This was along the lines of giving the plaintiff the "benefit of the doubt." The plaintiff isn't grateful, but that's not a reason to overturn the ALJ's opinion. *See Taylor v. Kijakazi*, No. 21-1458, *2021 WL 6101618*, at *3 (7th Cir. Dec. 22, 2021)("If anything, our review of the record shows that the ALJ gave Taylor the benefit of the doubt."); *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) ("The ALJ

canvassed the medical evidence and fully accounted for ]plaintiff's] physical and mental impairments" . . . gave [plaintiff] 'the benefit of the doubt' . . . ."); *Harris-Patterson v. Saul*, 835 F. App'x 130, 131 (7th Cir. 2021). Frankly, so what if the ALJ added an *additional* limitation not directly tied to the medical evidence? As former Magistrate Judge – now District Court Judge – Iain Johnston aptly put it, it's a "quizzical argument." *Karla J.B. v. Saul*, No. 19 CV 50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020)*("*Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument.").

Surely, the Seventh Circuit did not impose its "logical bridge" requirement so that plaintiff's attorneys could wield it in such a fashion. But, it is a contention plaintiff's attorneys raise from time to time, even though it makes little or no sense. *See, e.g., Anthony L. v. Kijakazi*, No. 20 CV 5184, 2022 WL 2237141, at *4 (N.D. Ill. June 22, 2022)("Essentially, Plaintiff argues the ALJ erred by placing more – not fewer – restrictions on Plaintiff's RFC."); *David C. v. Kijakazi*, No. 20-CV-3891, 2022 WL 602520, at *11 (N.D. Ill. Mar. 1, 2022)("Plaintiff is presumably not arguing the ALJ should have adopted the state agency physicians' opinions that he could perform greater work-related activities. But his assertion that these medical opinions do not support the ALJ's conclusion Plaintiff could do at least as much as the RFC is baseless."); *Patrick C. v. Saul*, 2020 WL 6287370, *8 (N.D. Ill. Oct. 27, 2020)("As a result, the ALJ added some restrictions involving climbing stairs and ramps and completely ruled out climbing ladders and scaffolds. That the plaintiff faults the ALJ here is a head scratcher . . . If the ALJ was wrong and the plaintiff can climb stairs all day, it doesn't move the needle in the direction of a remand. Is the plaintiff asking for a remand so the next ALJ can find him able to climb ladders?").

Perhaps more importantly, we have to point out that the plaintiff has provided absolutely no support for his contention that he would be off task 10% of the work day. [Dkt. #13, at 13-14]. If the plaintiff wants limitations in addition to the ones the ALJ found, the plaintiff has the burden of establishing them with medical evidence. *Gedatus*, 994 F.3d at 905; *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018)("It was [plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."). The only medical evidence the plaintiff cites having anything to do with concentration – indeed, the only mention of concentration plaintiff makes in his summary of the medical evidence – dates back to March 2017, three years before plaintiff's alleged onset of disability. Plaintiff was brought to the ER by the police after binge drinking. His behavior had been hostile, aggressive, and bizarre. (R. 1433). He was non-compliant with medication. Attention and concentration were said to be poor to fair. (R. 1429, 1434). His blood alcohol level was 289 mg/dl (R. 1429, 1431), more than three times the legal intoxication level. Obviously, this single, outdated report is not sufficient to carry the plaintiff's burden.

**B.**

Plaintiff also contends that the ALJ failed to accommodate his seizure disorder. More specifically, he complains that the restriction against having to work on ladders, ropes and scaffolds was insufficient because when an individual has a seizure he is not just at risk from falling from a ladder, rope or scaffold; but he is also unable to be attentive to his work and will be off-task during a seizure. [Dkt. #13, at 15]. While it is true that the ALJ found the plaintiff had a seizure disorder, the existence of an impairment does not necessarily mean it is disabling. Diagnosis is not disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.

15

1998). What matters is the severity of the condition and how it limits plaintiff's capacity to work based on clinical and/or laboratory findings. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity....").

The plaintiff "bears the burden to prove [h]e is disabled by producing medical evidence." *Gedatus*, 994 F.3d at 905 (7th Cir. 2021); *Karr*, 989 F.3d at 513 (7th Cir. 2021)(plaintiff must "identify[ ] ... objective evidence in the record" that she is disabled); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Again, the plaintiff is also responsible for directing the court to evidence that shows her limitations are greater than those found by the ALJ. *Gedatus*, 994 F.3d at 901; *Jozefyk*, 923 F.3d 492, 498 (7th Cir. 2019); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020). Here, throughout his entire brief, the plaintiff mentions medical evidence regarding his seizure disorder once, citing a single medical record. [Dkt. #13, at 6]. It says that on October 5, 2019, plaintiff was taken to the ER at Advocate Christ Medical Center after he fell and hit his head while intoxicated. (R. 1861, 1868). Plaintiff claimed he had a seizure (R. 1868), but treating physicians did not suspect seizure activity. There was no tongue biting or incontinence. (R. 1861). Musculoskeletal examination was normal: normal lumbar range of motion, normal extremity range of motion, normal strength. Neurological examination – sensory, coordination, motor – was also normal. Mood and affect were appropriate. (R. 1860). There's nothing there to show any greater limitations that the ALJ – seemingly out of caution – found.

16

Moreover, the ALJ cited a number of similar records of normal musculoskeletal and neurological examinations when plaintiff was either treated for injuries due to falls or claimed to have had a seizure. Plaintiff sought treatment for abdominal pain on February 11, 2016. (R. 678). Range of motion was normal throughout. Neurological assessment was grossly normal. Mood and affect were appropriate. (R. 680). On April 12, 2016, plaintiff sought treatment for falling down and hitting his head while intoxicated. (R. 1232). Aside from superficial laceration above the left eye, physical exam was normal. (R. 1233). On November 10, 2016, plaintiff sought treatment after falling on his right side in his hallway the previous evening while intoxicated. (R. 910). Musculoskeletal exam, including range of motion and strength – was normal, with the exception of some right hand swelling and tenderness. Neurological evaluation was normal. Psychological evaluation was normal in terms of mood and affect. (R. 912).

On September 26, 2017, plaintiff was treated for a facial laceration he suffered when he fell down at McDonald's. (R. 1157). Neurological exam was normal and plaintiff had full range of motion throughout. (R. 1158). Plaintiff and family later admitted he had been drinking. (R. 1160). On December 8, 2017, plaintiff had treatment for alcohol intoxication. Physical examination was normal. Psychological evaluation was unremarkable. (R. 1398)

On January 27, 2018, plaintiff was treated in the emergency room after being found drunk and passed out on the sidewalk. (R. 1556). Musculoskeletal range of motion was normal and neurological exam was normal. (R. 1555). On March 27, 2018, plaintiff was having annual blood work done and reported having a seizure the previous week; he had not had one since childhood. (R. 1503). But, neurological exam was normal. (R. 1503). Psychiatric exam was normal in terms of judgment, mood, and affect. Musculoskeletal exam was normal, including gait. (R. 1503).

17

In short, there is little evidence at all regarding seizures and even less indicating that any limitation stems from a seizure disorder. Again, the plaintiff cites one piece of evidence he claims supports his argument that he cannot work due to seizures, but it is a record of treatment for when he got drunk and fell down in October 2019. He claimed to have had a seizure, but the doctors didn't believe him. That's no reason to overturn the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #14] is granted, and the ALJ's decision is affirmed.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/14/23

18